Curia, per

O’Neall, J.
In these cases, it will only be necessary to consider and decide the 1st, 3d and 4lh grounds of the motion in arrest of judgment; a decision upon them will either decide or supersede all the' other grounds made in the case.
*64 The 3d Section of the Act of 1834, under which the defendant was indicted, is in the following words, viz : “ If any free white person, being a distiller, vendor, or retailer of spirituous liquors, shall sell, exchange, give, or in any otherwise deliver any spirituous liquors to any slave, except upon the written and express order of the owner, or person having the care and management of such slave, such person, upon conviction, shall be imprisoned not exceeding six months, and be fined not exceeding one hundred dollars.”
The fourth ground in arrest of judgment in Schroder’s cases' objects to the indictment, inasmuch as the defendant is not described as a “free white person.” Where a statute creates an offence, it is in general necessary that án indictment under it should describe the offence in the words of the enáctment; but here the words objected to do not enter into the statutory definition of the offence : they are merely descriptive of the person by whom the offence may be committed; and unless there is some uncertainty, Without the words, whether the defendant be liable to receive judgment on conviction, there can be no necessity to use them. The Courts of Sessions only exercise a general jurisdiction over free white persons; free negroes, mulattoes, mestizoes and slaves, belong to an inferior jurisdiction : and if proceeded against and convicted in the Court of Sessions, the Court, where the color is obvious, will refuse to pronounce sentence. The State v. Mary Hays, 1 Bailey, 275. Where a party is indicted, and pleads the general issue, be admits that he is a free white man ; and so far as he is concerned, will be concluded from denying the jurisdiction of the Court over him; The State v. Scott, l Bailey, 270. These general principles shew that there is no necessity to describe a defendant, in an indictment under this Act, as a free white person : and if he should wish to avail himself of the objection, that he is not a free white person, to entitle himself to the benefit of it, in a case where the color is not apparent, he must plead to the jurisdiction of the court.
The 3d ground objects to the sufficiency of the indictment, because the defendant is described as a vendor, and not as a vendor and retailer, of spirituous liquors. The words of the Act are, “being a distiller, vendor, or retailer, any one of these characters is sufficient; it is hot necessary that a man should combine all three, or the two last, before he would be liable under the Act. If the defendant be a vendor of spirituous liquors, and deliver spirituous liquors to a slave, he is clearly, within the words of the Act, guilty of the offence described by it. He who vends spirituous liquors would not necessarily be a retailer, but every retailer is a vendor.
The first ground insists that the description of the slave in the indict■inent, without either his own name or that of the master, is insufficient. *65 The general rule in framing an indictment, is, that the offence should be so described that the defendant may know how to answer it, the court what judgment to pronounce, and that a conviction or acquittal on it may be pleaded in bar to any subsequent or other indictment for the same of-fence. The count on which the defendant is convicted, is for delivering spirituous liquors to a “slave of a person and name unknown.” This, it seems to me, is entirely too general. Let it be tested by the first rule in' framing an indictment, that the offence should be so described that the defendant may know how to answer it. The offence consists in delivering spirituous liquors to a slave, without the written and express order of the owner, or person having the care and management of such slave. The answer to such a charge is of three parts : 1st. That there was in fact no delivery of spirituous liquors. 2d. That although there might have been such delivery, it was not to the slave alledged. And 3d. If to the slave alledged, then it was on the express order of the owner, or person'having the care of such slave. To an indictment framed' as this is, the'tw'o last parts óf the answer to the offence, as created by the Act, could not be made; for there is nothing to point to any specific slave, or to the person who by law might have authorized the delivery. The name of the slave, and of his owner,- or of the person having the care and management of such slave, is in general necessary to be set out in the indictment; where either one or both are unknown, there must be some equivalent description of the slave, and the act of delivery, which will sufficiently identify the transaction, so as to enable the defendant at once to know the offence to which he is called to answer. The uncertainty of this indictment may be tested in other modes. The indictment is in the words of the Act, for a delivery to a slave, without the written and express order of the owner, or employer. If, on the day alluded to in proof, he had delivered articles to an hundred slaves, and had a written and express order from every one except one, how could he be able to say which of the ninety-nine written orders, or whether any of them, would serve his purpose I So again, if a defendant be indicted for several acts of trading to different slaves at the same time, (as was the case here) and the indictment be in such general terms, how can a conviction or acquittal be applied to one, and not to all 1 The indictments are identical in words, and on their face are for the same offence; any one must bar the others. Such a generality in description would break down all distinction between crimes of the samé kind, and is hence neither to be sought for by the State, nor desired by the defendant. But above all, the court, whose duty it is to see that justice, even-handed justice,- is ad ministered to’all, would be utterly forgetful of *66 that duty, if it permitted a practice under this Act to grow up, which might either defeat its ends, or subject the innocent to its punishment.
But it is urged that a case may arise, in which, unless this general form is allowed, the defendant may violate the law, and yet escape. This may be true : and I would answer it by a first principle in criminal law, “that it is better that the guilty should escape, than the innocent suffer.” But, 1 apprehend, there is little danger of the extreme case supposed and conceded, occurring so often as to make us anxious to provide for it; if, however, it was, our want of Legislative power would prevent us from being able to supply the defect. The Act of 1834, and all of that class, were intended for the protection and benefit of the owners of slaves; and it is they generally who seek conviction of a person violating the law; they could readily supply all the facts necessary to give certainty to the offence charged. But when the trading or delivery was with or to a slave unknown, then some description of him, and the act of trading or delivery, might be given, so as to point out the offence supposed to be committed, and this would be sufficient.
In the case of the City Council vs. Johnston, decided at this place in February, 1826, the point which I have been considering was, it seems to me, in a perfectly analogous case, considered and decided by the Court of Appeals.
That case was a suit brought to recover a penalty of twenty dollars, under an ordinance of the city, which ordained — -“That if any person shall, after the passing of this ordnance, give a ticket to any negro, or negroes, or other person or persons of color, to remain out of his, her, or their owner’s or employer’s premises, after the beating of the tatoo, without the consent and knowledge of such owner and employer, he shall forfeit and pay the sum of twenty dollars, to be recovered in the City Court, to the use of such owner and employer.” The perfect analogy between that case and this, will be seen by comparing the clause of the ordinance just cited, with that of the Act of 1834: The words in the ordinance — “Any negro or negroes, or other person or persons of color,” are as general as the words “any slave,” used in the Act. Under the ordinance, the of-fence was not complete unless done “without the consent or knowledge of the owner, or employer;” so under the Act there is no offence, unless the trading or delivery be without the written and express order of the owner, or person having the care and management of such slave. This comparison shews that the essentia] requisites of the offence under the ordinance and Act, as to the person with whom it is committed, and the consent of the master or employer, are the same ; and hence the rule of that case must in these particulars govern this. In that case, my brother Johnson, in delivering the opinion of the court upon the question whether it was *67 necessary in the process to set out the name of the slave and the owner or employer, stated the rule to be — “That the facts constituting the injuiy or offence, must be set out with sufficient certainty to enable the defendant to meet it.” In applying that rule to the case before the court, he said— ■“That the process does not give the name nor any other description of the negro, nor is his owner or employer designated by name or other circumstance. Let us then suppose that the population of the city consists of 15,000 owners, and as many slaves, and so far as the process would aid the defendant, his chance of meeting the case to be proved would be in the proportion of one to the endless permutation of these numbers.
“There were circumstances which were well calculated to define and specify the offence, and were readily ascertained, and ought to have been stated.”
That decision, by a change of the name of the defendant, would be a decision of this case upon this point, and seems to me to be conclusive of it, But whether conclusive or not, it is greatly in aid of our view of the law applicable to this case. The motion to arrest the( judgment in the cases of The State vs. Jacob Schroder, is granted on the first ground.
DeSaussaure, Butler, Earle, Evans, CC. and JJ. concurred.